UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 1:12-CR-194-8 |
| | : | |
| ADRIAN TOTTON, | : | |
| Defendant | : | |

M E M O R A N D U M

I.        *Introduction*

        Presently before the court is defendant Adrian Totton's motion (Doc. 1162) under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.  For the reasons that follow, the court will grant Defendant's motion.

II.        *Background*

        On July 25, 2012, Defendant was indicted, along with numerous co-defendants, on multiple counts related to conspiracy to commit, and the commission of, various drug offenses.  (Doc. 1).  An arrest warrant was issued the same day, but Defendant was not immediately apprehended; thus, he did not initially appear before the court until August 24, 2012.  (Docs. 155-57).  At his initial appearance, Defendant requested appointment of counsel under the Criminal Justice Act[1] ("CJA"), and Attorney Steve Rice ("Attorney Rice") was appointed.  (Docs. 156, 205).  A little more than two weeks later, Defendant hired private counsel, Attorney Jerry Russo ("Attorney Russo"),

_____

[1] 18 U.S.C. § 3006A.

who entered his appearance on September 10, 2012, replacing Attorney Rice.  (See Doc. 170).

At some point in 2013, a plea agreement was offered to Defendant.  (See Docs. 1215 at 12-13; 1238-1).  Among the provisions in the agreement was a clause informing Defendant of a twenty-year "cap," or maximum sentence, which could be imposed for the substantive conspiracy offense to which Defendant was to plead guilty under the agreement.  (Doc. 1238-1 at 2, 3, 29).  The agreement also provided that the government would recommend, for sentencing guideline purposes, a drug weight attributable to Defendant of fifteen to fifty kilograms.  (Id. at 14).  When the plea agreement was offered in 2013, the guideline range applicable to Defendant—without adjustments under United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1 or 18 U.S.C. § 3553—was 188 to 235 months' imprisonment.  (See Doc. 1215 at 15; Doc. 1238 at 10).  Defendant ultimately rejected this plea agreement.  (Doc. 1215 at 22).

From September 2013 until his withdrawal in August 2014, Attorney Russo attempted to negotiate a reduction in the plea agreement's drug-weight recommendation in order to reduce Defendant's sentencing exposure.  (Id. at 16-22).  In particular, Attorney Russo testified that his goal—and that of his client—was to reduce the drug-weight recommendation in order to move to a lower tier on the guidelines' drug quantity table, U.S.S.G. § 2D1.1(c).  (Id. at 17).  A drop to the next tier on the drug quantity table would precipitate a two-level reduction in the Base Offense Level.  See U.S.S.G. § 2D1.1(c).  Attorney Russo explained that this, in turn, would result in a guideline range of 151 to 188 months' imprisonment under the then-applicable 2013 edition of the sentencing guidelines.  (Doc. 1215 at 17).  The Government repeatedly declined to

reduce the agreement's drug-weight recommendation.  (See Doc. 1215 at 18, 20, 21; Doc. 1210-1; Doc. 1238-3 at 2; April 28, 2016 § 2255 motion hearing, Exhibit "2").

On May 16, 2014, Attorney Russo moved to withdraw as counsel, explaining that his "client's desired method of litigating the case at this juncture creates an irreconcilable conflict for undersigned counsel to provide effective representation during [trial]."  (Doc. 772 at 2).  Attorney Russo's motion to withdraw was granted on August 14, 2014.  (Doc. 826).  On August 25, 2014, Attorney Rice was re-appointed under the CJA to represent Defendant.  (Docs. 835, 837).

On November 1, 2014, Amendment 782 to the sentencing guidelines— proposed in January 2014 and approved in April 2014—became effective, reducing by two levels the base offense levels assigned to most drug quantities under U.S.S.G. § 2D1.1(c).  See U.S.S.G. app. C, amend. 782 (Supp. Nov. 1, 2014).  It is undisputed that Amendment 782 was relevant in calculating Defendant's sentencing guidelines under the proposed plea agreement.  (See Doc. 1236 at 5; Doc. 1238 at 11-12).

On November 18, 2014, Attorney Rice, realizing the deadline for filing pretrial motions had "long since passed" prior to his reappointment, moved for leave to file a motion to suppress evidence nunc pro tunc.  (Doc. 929 at 1; see also Doc. 611 (extending pretrial motion deadline to December 9, 2013)).  The court denied the motion. (Doc. 934).  The day after Attorney Rice attempted to file the untimely motion to suppress, the Government filed an information charging prior felony drug convictions, indicating that it would seek a mandatory minimum sentence of twenty years' imprisonment if Defendant were convicted at trial.  (Doc. 930 at 1-2).

3

Trial was set to begin on December 8, 2014.  (Doc. 889).  On that day, immediately preceding jury selection, the court held a brief pretrial conference on the record.  (Doc. 1187 at 63-67).  During this conference, the interpretation of which is now the subject of substantial disagreement, the Government outlined the plea agreement that had been offered to Defendant.  (Id.)  Attorney Rice eventually indicated to the court that Defendant wished to proceed to trial.  (Id.)

At trial, Defendant was found guilty of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine, 21 U.S.C. § 846, and distribution and possession with intent to distribute cocaine and crack cocaine, 21 U.S.C. § 841(a)(1).  (Doc. 989).  On June 1, 2015, Defendant was sentenced to 240 months' imprisonment on each count—the statutory mandatory minimum—with the sentences to be served concurrently.  (Doc. 1142 at 3).  A direct appeal was not filed.

On August 11, 2015, Defendant filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.  (Doc. 1162).  On January 6, 2016, this court ordered the appointment of CJA counsel for Defendant.  (Doc. 1190).  A hearing on several of the issues raised in Defendant's 2255 motion was also scheduled, which took place on April 28, 2016.  (Doc. 1211).  A second day of brief testimony was held on August 15, 2016.  (Doc. 1225).  The parties then filed supplemental briefing, and the instant 2255 motion is now ripe for disposition.

III.        Discussion

Defendant raises five claims in his initial 2255 motion, all sounding in ineffective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution.  It is firmly established that claims of ineffective assistance of counsel

4

are governed by Strickland v. Washington, 466 U.S. 668 (1984).  The burden is on the defendant to prove such a claim.  Strickland, 466 U.S. at 687.

Strickland sets forth a two-prong test to determine claims of ineffective assistance of counsel.  First, counsel's performance must be deficient.  Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S. at 687).  "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'"  Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 688).

Second, counsel's deficient performance must have prejudiced the defendant.  Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692).  "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694).

Here, Defendant claims that his counsel was ineffective for (1) allegedly providing federal agents with Defendant's private cellular telephone number which led to Defendant's apprehension; (2) failing to timely file pretrial motions; (3) failing to file for an extension of time in which to file pretrial motions; (4) failing to file a direct appeal; and (5) failing to properly advise Defendant regarding plea agreement negotiations.  The court will address each claim in turn.

A.  Providing Cell Phone Number to Law Enforcement

Defendant first claims that Attorney Russo provided constitutionally deficient assistance by allegedly giving Defendant's private cellular telephone number to federal

agents, who used the number to locate and apprehend Defendant.  Defendant provides no support for this claim other than alleging that the phone number was "known only by [Attorney Russo]" and that "Mr. Russo gave federal agents my number to apply for a Trap and Trace to find my location after he agreed to represent me."  (Doc. 1162 at 4).  According to Defendant, this was a "[c]onflict of [i]nterest."  (Id.)

First, in its initial response to Defendant's 2255 motion, the Government painstakingly explained how Defendant was located through "common call analysis" rather than by receiving any information from Attorney Russo.  (See Doc. 1185 at 7-8; Doc. 1187 at 1-61).  Through this investigative method, and with the assistance of court-authorized wiretaps and subpoenaed cell phone records, the Government was able to independently ascertain Defendant's purported "secret" phone number, and then use that cellular phone to track and locate Defendant.  (Id.)

Even if, for the sake of argument, Attorney Russo did turn over Defendant's private phone number to federal agents—which the Government and Attorney Russo deny, (Doc. 1185 at 7 n.1)—and that action fell below an objective standard of reasonableness, Defendant has not explained how this purported deficient assistance "unfairly prejudiced him," as the second prong of the Strickland analysis requires.  Defendant has not explained, nor can the court surmise, how Defendant's eventual apprehension by federal authorities, pursuant to a valid arrest warrant, unfairly prejudiced him in this case.  Consequently, Defendant has met neither Strickland prong on his first claim, and it is therefore denied.

B.  <u>Failing to File Pretrial Motions or Extend Time to File Such Motions</u>

Defendant's second and third claims will be addressed together, as they encompass similar ineffectiveness allegations.  Defendant claims that Attorney Russo was ineffective for failing to timely file a pretrial motion to suppress evidence, which Defendant alleges he requested be filed.  (Doc. 1162 at 5).  Relatedly, Defendant asserts that Attorney Russo was also ineffective for failing to move to extend the time in which to file a pretrial motion to suppress.  (<u>Id.</u> at 7).

Failing to timely file a motion to suppress evidence, when there is a valid basis for suppression, may rise to the level of constitutionally deficient representation.  <u>See</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 501-02 (3d Cir. 2005) (citing <u>Morrison v. Kimmelman</u>, 752 F.2d 918, 922 (3d Cir. 1985)); <u>Rodriguez v. Young</u>, 906 F.2d 1153, 1160-61 (7th Cir. 1990).  In order to succeed on such a claim, however, the defendant must not only show a valid basis for suppression, but also that (1) the motion would likely have been granted, and (2) there is a reasonable likelihood that the resultant suppression would have affected the outcome at trial.  <u>Thomas</u>, 428 F.3d at 502.

In the instant case, Defendant has provided little information regarding the suppression motion he alleges Attorney Russo should have filed.  Defendant's only elaboration on his claim asserts that "post-arrest statements," which were allegedly "obtained illegally and used against [D]efendant improperly," were a "key factor" in his conviction.  (Doc. 1162 at 14).  Defendant, however, does not explain why there would have been a basis to suppress this evidence (*i.e.*, why the post-arrest statements were "obtained illegally"), let alone why a suppression motion would likely have been granted and changed the outcome of trial.  Accordingly, Defendant's second claim is denied.

Furthermore, because Defendant has failed to demonstrate ineffective assistance for not filing a pretrial motion to suppress evidence, it follows that Defendant's claim of ineffectiveness regarding Attorney Russo's failure to extend the time in which to file a pretrial motion to suppress evidence also falls short. Defendant has not established that failing to extend the pretrial motion deadline was objectively unreasonable conduct, or that such conduct prejudiced Defendant. Thus, Defendant's third claim is also denied.

### C. Failing to File a Direct Appeal

Defendant's fourth[2] claim of ineffective assistance of counsel asserts that Attorney Rice was ineffective for failing to file a direct appeal even though Defendant contends he clearly communicated a desire to appeal. (Doc. 1162 at 16). With regard to the first Strickland prong—objectively reasonable representation—"counsel has 'a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" Solis v. United States, 252 F.3d 289, 293 (3d Cir. 2001) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)). "[U]nder Flores-Ortega, reviewing courts must conduct a "circumstance-specific reasonableness inquiry' regarding counsel's failure to file a notice of appeal[.]" Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009) (quoting Flores-Ortega, 528 U.S. at 478). Generally, when a defendant claims he directed his attorney to file an appeal and that his attorney failed to comply, this creates a question of fact requiring an evidentiary hearing. Solis, 252 F.3d at 294.

---

[2] This claim actually appears as the fifth ground for relief on Defendant's 2255 motion, (see Doc. 1162 at 16), but for the sake of clarity will be discussed as his fourth claim here.

Here, as required due to Defendant's claim that he informed Attorney Rice that he wanted to directly appeal, an evidentiary hearing was held to determine why a direct appeal was not filed.  The facts elicited from the hearing, as well as from other evidence of record, clearly establish that Attorney Rice's decision not to file a direct appeal, made after consulting with Defendant, was objectively reasonable.  Thus, the decision did not violate Defendant's Sixth Amendment rights.

The record reflects that Defendant, at all relevant times, sought only to challenge the constitutional effectiveness of his counsel.  First, in Defendant's 2255 motion, he raises only claims of ineffective assistance of counsel.  (See Doc. 1162).  Second, at sentencing, Defendant stated that he did "plan to appeal," but qualified that statement by explaining, "I believe that I wasn't given a fair trial . . . based on the fact that prior counsel and his negligence [sic], he let the deadline for pretrial motions lapse and handicapped my defense . . . and I have no choice but to *appeal that situation*[.]"  (Doc. 1187 at 71) (emphasis added).

Furthermore, it is undisputed that, on the date of sentencing, Attorney Rice personally consulted with Defendant about filing an appeal.  Regarding that consultation, Attorney Rice testified as follows:

> What we had discussed whenever we met up at the [Marshal's] office in there, the room they had available, was about habeas, and I did not tell him don't file an appeal.  In fact, it was quite the contrary.  He said he didn't want that appeal, meaning a direct appeal . . . , that the issue ultimately it was perceived was dealing with the ineffective assistance of counsel.  As you may recall, there had been a motion to suppress that I had filed that because of timeliness we were not able to pursue, something that [Defendant] quite rightfully was concerned about.  There was not much I could do.  The time had long since passed since I had gotten into it, and because with the way these kinds of claims are pursued and what you can actually raise on appeal, if the issue

> was the ineffective assistance of counsel that contributed to the court doing what it did, then that was something [that] was going to be pursued through a habeas corpus action.

(Doc. 1215 at 48-49).

Attorney Rice's testimony on this matter is corroborated by the contemporaneous notes he wrote after the sentencing hearing.  The notes, which he personally entered approximately two weeks after the hearing, state that "[Defendant] said he didn't want to do a direct appeal, but intended to do a habeas."  (Doc. 1238-2).

It is well settled that claims of ineffective assistance of counsel are generally raised on collateral review, rather than on direct appeal.  United States v. Olfano, 503 F.3d 240, 246 (3d Cir. 2007) (citing United States v. McLaughlin, 386 F.3d 547, 555 (3d Cir. 2004)); United States v. Frankenberry, 696 F.2d 239, 241-42 (3d Cir. 1982).  The record demonstrates that Attorney Rice was aware of this well-settled principle.  The record also shows that after meaningful consultation with Defendant, Attorney Rice acted according to his client's expressed concerns and the law of the circuit.

Thus, it cannot be said that Attorney Rice's decision not to file a direct appeal was objectively unreasonable under the circumstances.  Therefore, because Defendant has not satisfied the first Strickland prong, no discussion of the second prong is required, and the court will deny Defendant's fourth claim.

D.  Failing to Provide Adequate Representation During Plea Negotiations

Finally, Defendant claims that he received ineffective assistance of counsel during plea agreement negotiations leading up to trial.  He contends that counsel's assistance fell below an objectively reasonable standard of conduct when a significant and relevant amendment to the sentencing guidelines was neither considered by his counsel

nor presented to him so that he could make an informed decision regarding the plea offer. He further asserts that he was unfairly prejudiced by counsel's deficient conduct. The court is constrained to agree.

The Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (citations omitted). Strickland's two-prong test applies to ineffectiveness challenges arising out of the plea process. Id. at 162-63 (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). Accordingly, this court must determine whether counsel's representation surrounding the instant plea offer "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and whether such conduct unfairly prejudiced Defendant, id. at 692. The court finds that Defendant's claim satisfies both prongs.

1. *Strickland Prong One: Deficient Performance of Counsel*

In the plea-bargain context, "counsel is required to give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'" United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)). Knowing the potential sentencing exposure under a plea agreement versus standing trial is "an important factor in the decisionmaking process," and is often "crucial to the decision whether to plead guilty." Id. (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)). Thus, it follows that in order to provide effective advice, "counsel is required 'to know the Guidelines and the relevant Circuit precedent[.]'" Id. (quoting United States v. Smack, 347 F.3d 533, 538 (3d Cir. 2003)). As the Third Circuit has admonished, "Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings . . . familiarity with the

structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation." Day, 969 F.2d at 43.

Instantly, Defendant contends that his understanding of the sentencing guideline range under the plea agreement was 188 to 235 months' imprisonment.  This starting guideline range, he maintains, was conveyed to him by both of his attorneys on multiple occasions.  Defendant also avers that he had no knowledge of Amendment 782 until the Government mentioned changes to the sentencing guidelines during the closing of the December 8, 2014 pretrial conference.  He contends that Amendment 782 achieved the exact objective he had been pursuing in plea negotiations for a drug-weight reduction, i.e., a two-level reduction in his base offense level under U.S.S.G. § 2D1.1(c)'s drug quantity table.  These assertions are amply supported by the record.

As noted above, Attorney Russo labored for months to try to convince the Government to lower the agreement's recommended drug weight in order to "reduce the base level offense such that the starting point for [Defendant's] potential 5K1.1 motion would begin at a lower amount." (Doc. 1215 at 17).  Attorney Russo "realized that the only way to reduce [Defendant's] exposure under the guideline was to lower the weight[.]" (Id. at 18).  The Government, however, repeatedly refused to lower the recommended drug weight. (See Doc. 1215 at 18, 20, 21; Doc. 1210-1; Doc. 1238-3 at 2; April 28, 2016 § 2255 motion hearing, Exhibit "2").

From the time the plea agreement was offered in 2013 until the Government's closing remarks at the December 8, 2014 pretrial hearing, the record shows that Defendant was counseled and believed that under the plea agreement he faced a starting guideline range of 188 to 235 months' imprisonment.  Both Attorney Russo's

testimony and Defendant's own testimony repeatedly bear this fact out.  (See Doc. 1215 at 16-17, 63-67, 73-74; Doc. 1228 at 11).

At the pretrial conference, which took place immediately preceding jury selection and approximately one month after Amendment 782 had gone into effect, the issue of Defendant's guideline range under the plea agreement arose.  During that hearing, counsel for the Government, Assistant United States Attorney Christy Fawcett ("Attorney Fawcett"), recited the main provisions of the plea offer that Defendant had rejected.  (Doc. 1187 at 64-65).  Among other provisions, Attorney Fawcett stated that Defendant's guideline range under the plea offer would "start out at 151 to 188" months' imprisonment, and "that figure would go down with a 5K."  (Id. at 64).

Defendant immediately informed Attorney Rice that he believed Attorney Fawcett was incorrect, and that his guideline range was actually 188 to 235 months.  (Id. at 65).  The following exchange took place:

> Attorney Rice:  Mr. Totton is indicating to me that he believes 151 to 188 is lower than what it actually would be.
>
> Defendant Totton:  Yes.
>
> Attorney Rice:  I would tell you in any case, he's indicating to me it wouldn't matter --
>
> Defendant Totton:  No.
>
> Attorney Rice:  -- in his choice.  But he believes that may be lower than what they actually are.
>
> The Court:  Okay.  Mr. Totton, is Ms. Fawcett's statement understandable and do you agree she has correctly stated the situation?
>
> Defendant Totton:  No, sir.  I believe that the actual guideline range is 188 to 235.  And that's with acceptance of responsibility.

….

> Attorney Fawcett:  And just for Mr. Totton's benefit, *he may be looking at the guidelines before the reduction in the guidelines that has occurred since November of 2014.*  But it doesn't make any difference.   He's rejected the plea agreement and acknowledges he got it.

> The Court:  Okay.

> [End of Transcript]

(Doc. 1187 at 65-66) (emphasis added).

The parties disagree about the interpretation of the above-quoted portion of the transcript.  The Government argues that when Defendant interrupted Attorney Rice by saying "No," Defendant was indicating that the guideline range discrepancy did not make any difference in his choice as to whether to take the plea offer or continue to trial.  (Doc. 1238 at 14-15).  Defendant, on the other hand, maintains that the guideline range discrepancy did affect his decision to reject the plea offer and proceed to trial.  (See Doc. 1189 at 4; Doc. 1215 at 74).

Notably, when Defendant testified in the 2255 motion proceedings, he explained that during the pretrial conference he had an off-the-record discussion with Attorney Rice.  (Doc. 1215 at 68-69, 73-74).  During this off-the-record conversation, Defendant avers that he told Attorney Rice that Attorney Fawcett had given the wrong guideline range.  (Id. at 68-69).  Defendant further testified that Attorney Rice responded by saying that Attorney Fawcett was incorrect and that Defendant's range under the plea agreement was 188 to 235 months.  (Id. at 69, 73-74; Doc. 1228 at 89).  Attorney Rice does not dispute Defendant's assertion about the off-the-record conversation or that he told Defendant the incorrect guideline range of 188 to 235 months.  Rather, Attorney Rice

14

maintains that Defendant indicated that the discrepancy "was not something that would affect how we wanted to proceed."  (Doc. 1228 at 5).

The Government argues that crediting Defendant's testimony and arguments would require a conclusion that "Attorney Rice flatly lied to the Court during the pretrial hearing . . . and that Attorney Rice again lied to the Court" during the 2255 motion proceedings.  (Doc. 1238 at 15-16).  The court disagrees.

A much simpler and less nefarious explanation is that during the December 8, 2014 pretrial conference, there was a great deal of confusion between Defendant and Attorney Rice regarding the plea agreement and its corresponding guideline range. Notably, Defendant testified credibly that during the off-the-record "side conversation" at the pretrial conference, he told Attorney Rice that "it wouldn't matter anyway because [Attorney Fawcett]'s not offering it, she wasn't offering me the plea at that time.  *The time for me to take the plea had passed.  So, I mean, I was basically stuck.*"  (Doc. 1228 at 12) (emphasis added).  This critical testimony not only illustrates that the guideline range was pertinent to whether Defendant accepted the plea offer, but also shows that at the pretrial conference Defendant assumed that the plea offer was no longer available and that he had no choice but to proceed to trial.

Thus, the court finds credible Defendant's claim that the guideline range discrepancy was highly relevant and material to his decision regarding the plea offer. Attorney Rice also was credible in his assertion that Defendant indicated to him at the pretrial conference that the guideline discrepancy did not matter—but not because Defendant did not care about the guideline range discrepancy, as the record reflects he

undoubtedly did, but because Defendant was under the mistaken impression that he could no longer accept the plea offer.

As Defendant aptly points out, after this less-than-clear pretrial conference, Attorney Rice failed to "right the lilting ship." (Doc. 1236 at 11). Instead of determining the actual guideline range under the plea deal after Amendment 782, correcting his mistaken advice regarding a guideline range of 188 to 235 months, consulting with his client about whether the actual guideline range would affect Defendant's decision regarding the plea offer, and correcting whatever misapprehension Defendant had about the plea deal's availability, Attorney Rice simply moved ahead to trial.

When asked directly about whether he discussed the guidelines under the plea agreement with his client after the conclusion of the pretrial conference and before the start of trial, Attorney Rice testified,

> [I]n this case, I know that [Defendant] had been represented by another attorney, so a lot of the discussions I might ordinarily have about, hey, this is the deal, these are the pros and cons of the deal, things that you do in a normal representation, I don't know that the same discussions would have occurred because by the time I had gotten involved, there had already been a decision made to go to trial. . . . *I can say that I presently do not recall any discussion on that. And I will tell you that at the time the issue would have come up and was raised by Attorney Fawcett, I wasn't in the midst of trying to negotiate a deal. I came in ready for a trial. That's how I recall this. This wasn't about trying to haggle over whether there was going to be a plea agreement.* . . . I think Ms. Fawcett wanted to get this stuff on the record about what had been done because I don't think she agreed with Mr. Totton's decision to want to go to trial.

(Doc. 1228 at 7-8) (emphasis added).

In arguing that Attorney Rice's conduct was objectively reasonable, the Government contends that the plea offer was no longer available at the December 8, 2014

16

pretrial conference.  (See Doc. 1238 at 8-10).  This argument is belied by the record.

While the plea agreement does contain a "Deadline for Acceptance" of September 9,

2013, (see Doc. 1238-1 at 41), plea negotiations continued well into July of 2014, (see,

e.g., Docs. 1210-1, 1238-3).  Moreover, the Government's own statements at the 2255

motion hearing unequivocally indicate that Defendant still had the opportunity at the

pretrial conference to accept the plea offer and avoid trial:

> Attorney Fawcett:  [Questioning Defendant] And I told you during that colloquy [at the pretrial conference] that the offer was 151 to 188, did I not?
>
> Defendant Totton:  Yes, ma'am, but Mr. Rice told me something different.  You were trying to help me.  And you were trying to help me, you were.
>
> Attorney Fawcett:  *And you did not accept the offer during that colloquy.*
>
> Defendant Totton:  Because Mr. Rice was telling me something different.  He was telling me that [the guideline range of 151 to 188 months] was incorrect and he was looking at I guess an outdated guideline range. . . .

 (Doc. 1215 at 73) (emphasis added).  It simply strains credulity to believe that if

Defendant wanted to take the plea offer at the pretrial conference rather than go to trial,

the Government—which initiated the conference to place on the record Defendant's

rejection of the plea offer—would then have claimed that the offer was off the table.

Whether failing to know or advise a client about a relevant amendment to the

sentencing guidelines is deficient representation depends on the facts of the case.  See,

e.g., United States v. Cieslowski, 410 F.3d 353, 359-60 (7th Cir. 2005).  However, the

Third Circuit has unequivocally held that counsel must provide a defendant with enough

information to make an informed decision regarding whether to accept a plea offer, Bui,

795 F.3d at 367, and that knowing the applicable sentencing exposure is a crucial aspect of the plea-bargain decisionmaking process, <u>Day</u>, 969 F.2d at 43.

Accordingly, under the instant circumstances, the court finds that Attorney Rice's conduct fell below an objective standard of reasonableness.  The record shows that Attorney Rice did not know about Amendment 782 or its effect on Defendant's guideline range under the plea deal.  This lack of knowledge in itself may not have been constitutionally deficient.  However, any doubt as to whether Attorney Rice's conduct was objectively unreasonable was removed when he disregarded Attorney Fawcett's explanation at the pretrial conference about the recent change to the guidelines.  (<u>See</u> Doc. 1187 at 66).

Defendant's comments during the pretrial conference, both on and off the record, demonstrate that the sentencing guideline range was material and relevant to his decision regarding the plea deal, and that he had communicated as much to Attorney Rice.  Attorney Rice failed to follow up on the Government's explanation about Amendment 782 or correct the erroneous advice he had given Defendant during the pretrial conference.  Furthermore, at this conference Defendant was under the impression that he could no longer accept the plea deal and had no choice but to go to trial.  Attorney Rice neither corrected Defendant's misapprehension nor discussed whether the amended guideline range of 151 to 188 months would affect Defendant's decision regarding the plea offer.

At the 2255 motion hearing, Attorney Rice testified, "I tried to figure out, wait a second, if [the guideline range discrepancy] is an important point, if this would make a difference, maybe we need to do a timeout." (Doc. 1228 at 5).  The court concludes that a

18

"timeout" was indeed necessary at the pretrial conference when it became clear that

Defendant, Attorney Rice, and the Government were not on the same page regarding the

plea deal.

The court finds that taken together, Attorney Rice's conduct of not knowing

about Amendment 782, giving Defendant the wrong sentencing exposure information, not

taking the time to discuss the amended guideline range after being informed of the change

to the guidelines, and not consulting with Defendant about whether to accept the plea deal

or continue to trial amounted to objectively unreasonable conduct.  Therefore, Defendant

has satisfied Strickland's first prong.

### 2. *Strickland Prong Two: Prejudice*

To establish prejudice "[i]n the context of pleas a defendant must show the

outcome of the plea process would have been different with competent advice."  Lafler,

566 U.S. at 163 (citation omitted).  When a defendant claims that ineffective advice

induced rejection of a plea offer, he must demonstrate that "'but for counsel's deficient

performance there is a reasonable probability he and the trial court would have accepted

the guilty plea' and the resulting sentence would have been lower."  Shotts, 724 F.3d at

376 (quoting Lafler, 566 U.S. at 174).

Here, Defendant has satisfied Strickland's prejudice prong.  Initially, this

court notes that it would have accepted Defendant's guilty plea.  In addition, the majority of

record evidence provides more than a reasonable probability that if Defendant had been

provided effective advice surrounding the plea offer, he would have accepted the plea

agreement rather than proceed to trial.[3]  For example, Defendant provided evidence that Amendment 782 achieved the exact objective he had sought during months of negotiations concerning the plea agreement's recommended drug weight.  Additionally, the record demonstrates that Defendant had made extremely inculpatory post-arrest statements which he knew were going to be used at trial to strengthen the Government's case against him.  (See Doc. 1215 at 31 (Attorney Fawcett recalling that Defendant had "made [post-arrest] admissions that he was picking up four to five kilos once or twice a month each month" from a co-defendant)).

The Government argues that because Defendant knew he potentially faced a much higher sentence by going to trial than under the plea agreement's pre-amendment range of 188 to 235 months, and yet still rejected the plea offer, he cannot now show prejudice by claiming the amended 151 to 188 months range would have changed his position.  (Doc. 1238 at 15-16).  The court does not agree.  The difference between the sentencing guideline ranges at issue is anywhere from three to four years' imprisonment, an amount of time objectively sufficient to affect a defendant's decision on a plea deal.

Finally, the sentence Defendant received after trial was undoubtedly higher than that which he would have received under the plea agreement.  Defendant was sentenced to 240 months' imprisonment on each of the two counts for which he was convicted at trial, to be served concurrently.  (Doc. 1142 at 3).  Under the plea agreement, Defendant's guideline range would have started at 151 to 188 months' imprisonment, with potential downward adjustments pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553.

---

[3] The court notes that the objective evidence provided is more than the Third Circuit requires.  See United States v. Cobb, 110 F. Supp. 3d 591, 599 (E.D. Pa. 2015) (explaining that some circuits require objective evidence that a defendant would have pleaded guilty but for counsel's ineffective advice, but that the Third Circuit "has not yet opted to join those circuits in so holding." (citing United States v. Purcell, 667 F. Supp. 2d 498, 511-12 (E.D. Pa. 2009)).

Therefore, Defendant has satisfied the second <u>Strickland</u> prong of showing prejudice resulting from counsel's constitutionally deficient performance surrounding the plea offer.  And because both <u>Strickland</u> prongs are satisfied, Defendant's claim of ineffective assistance of counsel will be granted.

*3.  Appropriate Remedy for Sixth Amendment Violation*

"Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" <u>Lafler</u>, 566 U.S. at 170 (quoting <u>United States v. Morrison</u>, 449 U.S. 361, 364 (1981)). When a defendant has shown a reasonably probability that, but for counsel's ineffective assistance, he would have accepted a plea offer rather than going to trial, "the court may exercise its discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between."  <u>Id.</u> at 171.  When a "mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial" may not provide sufficient relief.  <u>Id.</u>  Rather, the appropriate relief in these circumstances "may be to require the prosecution to reoffer the plea proposal."  <u>Id.</u>

In this case, Defendant's convictions at trial each implicated a mandatory minimum sentence of 240 months' imprisonment.  Accordingly, the court finds that the most appropriate remedy is for the Government to reoffer the plea agreement to Defendant.  After this has occurred, and assuming that Defendant accepts the plea offer, the court will then decide "whether to vacate the conviction from trial and accept the plea, or leave the conviction undisturbed."  <u>Id.</u>

*V.*        *Conclusion*

Based on the foregoing analysis, the court will grant Defendant's motion (Doc. 1162) under 28 U.S.C. § 2255 only on his claim of ineffective assistance of counsel surrounding the plea agreement negotiations.  All other claims in the motion will be denied.  An appropriate order will follow.

<u>/s/ William W. Caldwell</u>
William W. Caldwell
United States District Judge